**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SAMUEL SIMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-5494** |
| **ASSUMPTION PARISH SHERIFF OFFICE, ET AL.** | **SECTION "J"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and **42 U.S.C. § 1997e(c)(1) and(2)** as applicable. Upon review of the record, the Court finds this matter can be disposed of without further proceedings.

## I.    Factual and Procedural Background

Plaintiff Samuel Sims ("Sims") was a pretrial detainee housed in the Assumption Parish Detention Center ("APDC") in Napoleonville, Louisiana, when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.[1] He named as defendants the APDC, the Assumption Parish Sheriff's Office, Sheriff Deputies Lealand Falcon, Bruce Prejean, and Charles Johnson, Nurse Frannie, and the APDC nursing staff in connection with his claims challenging the manner of his arrest and certain conditions and events in APDC.[2]

To facilitate the Court's review and clarify a number of the allegations made against the defendants, the Court issued a response order requiring Sims to provide additional information about the charges pending against him at the time of filing.[3] *Spears v. McCotter*, 766 F.2d 179,

---

[1] ECF No. 1, ¶I(A), at 2; *id.*, ¶III, at 4.
[2] *Id.*, ¶I(B), at 2; *id.*, ¶III, at 4.
[3] ECF No. 7.

181 (5th Cir. 1985) (courts may use questionnaires to clarify the factual and legal basis of a prisoner's claims and the responses are treated "in the nature of a motion for more definite statement" under Fed. R. Civ. P. 12(e)) (citing *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)). Sims's two responses to that Order are included as addendums to his allegations summarized in the next section of this Report.[4] *Id.* (a prisoner's answers to the Court's questionnaire are considered an elaboration on the allegations in the complaint, not as a separate pleading) (citing *Watson*, 525 F.2d at 882).

A.    <u>Arrest on July 17, 2022</u>

Sims claims that on July 17, 2022, he was stopped by a sheriff's deputy, defendant Charles Johnson, for an alleged traffic violation for which he was never ticketed.  Sims claims that he exited the car, and Johnson told him to turn around and put his hands on the trunk.  Sims alleges that, when he moved, Johnson tasered him.  Johnson then ran over to hold Sims down by the neck. He claims that, without training or certification, Johnson removed the taser prong from his back before EMTs arrived.

Sims claims that, once another officer arrived, Johnson ran to plaintiff's car, stole $600, and put it into his patrol car. Sims alleges that Johnson then told the other officer that plaintiff had a gun in his pocket. Johnson then picked plaintiff up to move him to his patrol unit.

Sims alleges that, in the meantime, other officers and detectives searched plaintiff's car and put money and two needles on the car hood. Sims claims that he then saw Johnson reach into his patrol car and return with a "substance" and a gun to add to the evidence.

Sims further alleges that when EMTs arrived, they appeared upset that Johnson had removed the taser without waiting for them. Sims claims that, as the EMT's placed him on a

---

[4] ECF Nos. 11, 13.

stretcher, he heard the other officers asking Johnson why he had moved some of the items out of plaintiff's car. Plaintiff was then taken for treatment for his back and neck injuries, including injury from Johnson pulling out the taser.

Sims further alleges that, when he was released from the hospital, Johnson was the officer there to transport him to jail. He claims that Johnson placed him in handcuffs behind his back and spoke unprofessionally to him. Sims asserts that Johnson put him in the back seat of the police unit without a seat belt. Sims claims that Johnson was speeding which caused Sims to hit face first into the cage. Sims claims that Johnson also abruptly stopped the car on purpose to cause plaintiff again to fall against the cage. Sims alleges that, when they arrived at the jail, he was on the floor of the unit because of Johnson's erratic driving.

Sims claims that his family filed complaints about Johnson and the other officers with internal affairs, but defendants Deputies Falcon and Prejean, ignored the complaints. He claims that Falcon and Prejean also harassed family members when they tried to file complaints and call internal affairs about Deputy Johnson.

Sims indicates that, as a result of the traffic stop by Deputy Johnson, he was charged with the following offenses: possession with intent to distribute methamphetamine, possession with intent to distribute cocaine, possession with intent to distribute marijuana, two counts as a felon in possession of a firearm, illegal carrying of a weapon, illegal carrying of a weapon in the presence of drugs, suspended driver's license, obstruction of justice, resisting arrest by force, and possession of a stolen firearm by a felon.[5] Sims claims, however, that several months after the filing of this suit, the charges against him were dismissed on a finding of no probable cause.[6]

---

[5] ECF No. 11, at 2.
[6] ECF No. 13.

B.    **Conditions at APDC**

Sims alleges that the APDC facility is outdated, a fire hazard, and a health risk. He claims that there are no water sprinklers in the jail and no sprinklers, fire alarms, or fire extinguishers in the dormitories. He also alleges that medical personnel are not present at the jail 24 hours a day, and the correctional officers are not certified to address inmates' health issues. He claims that there are no emergency call buttons or intercoms for inmate safety in the lockdown cells. He also complains that the jail officers only make rounds twice a day because the jail is understaffed.

Sims further alleges that, on November 24, 2022, around 2:52 a.m. or 3:20 a.m., the air conditioner in his dormitory went out which caused the floors to sweat. He claims that an inmate fell on the wet floor. However, instead of repairing the problem, the jail officials put the inmates on lockdown and left them in their cells even after the fallen inmate was removed.

Sims claims that, when he later got out of his bed, he too slipped and fell which knocked him unconscious. He claims that, when he awoke, an EMT from Acadian Ambulance was standing over him complaining about the wet walls and floor. He was taken to the hospital for seven to eight hours for treatment.

Sims alleges that, when he returned to the jail from the hospital, he was placed in T-cell #1 for 24 hours with a dirty drain but no toilet or water for over 24 hours. He did not have a bunk and instead, had to sleep in a boat bed on the floor. He claims that there was human feces on the wall and in the drain. He claims that there was a bad water leak coming from the ceiling which caused water to come in under the cell door and mix with the feces. He claims that he reported this to the shift commander and the Warden, and they said there was nothing they could do. He alleges that he went two nights without his medication.

Finally, Sims claims that the nurses at APDC are unprofessional, take money from his account, and serve other inmates his meals. He claims that he asked defendant Nurse Frannie about receiving only half of a pill, and she told him that she breaks the 20mg pill in half to match plaintiff's 10mg prescription and gives the other half to an inmate who also needs it.

C.    **Relief Sought**

Sims states that he seeks compensation for his injuries and the return of the $600 taken by Deputy Johnson. He also seeks compensation for his fall in the jail and for the unsanitary conditions, unprofessional nursing practices, and dangerous conditions, and to have APDC closed down. He also wants compensation for having been refused a chance to speak with internal affairs. He would like Deputy Johnson fired for police brutality and unprofessionalism, and the Sheriff's Office investigated by internal affairs.

## II.    Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not

exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    Analysis

### A.    Improper Defendants

Sims has named several defendants who are either inappropriate parties and/or parties against whom § 1983 provides no remedy. These defendants and any claims against them must be dismissed as frivolous.

#### 1.    Assumption Parish Sheriff's Office

As noted above, to recover under § 1983, the plaintiff must identify both the constitutional violation and the responsible "person" acting under color of state law. *Flagg Bros., Inc.*, 436 U.S. at 155-56; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989). A person's or entity's capacity to sue or be sued is a requirement under Fed. R. Civ. P. 17(b) and by that rule, is determined by reference to the law of the state in which the district court sits. The State of Louisiana grants no such legal status to any law enforcement office or department. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. App. 3d Cir.), *writ refused*, 352 So. 2d 235 (La. 1977). For this reason, "a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action." *Francis v. Terrebonne Par. Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d

273, 283 (5th Cir. 2002)); *see also Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Fitch v. Terrebonne Parish Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006).

Because the Assumption Parish Sherriff's Office is not a juridical or suable entity to be held liable under § 1983, the claim against it, if any, is frivolous and otherwise fails to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

## 2.    **Assumption Parish Detention Center**

Sims also named APDC as a defendant because it is the facility where he was housed during the relevant events about which he complains. However, the jail itself is not a person or proper defendant, and the claims against it also must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

For purposes of § 1983, a parish prison facility simply is not recognized as a "person" within the meaning of the statute. *Douglas v. Gusman*, 567 F. Supp.2d 877, 892 (E.D. La. 2008) (Order adopting Report and Recommendation) (citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3rd Cir. 1973)); *Cullen v. DuPage Cnty.*, No. 99-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester Cnty. Corr'l Facility Admin.*, No. 97-0420, 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook Cnty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cnty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).

Furthermore, a parish prison, like the sheriff's office above, is not a proper defendant because it lacks the capacity to sue or be sued required by Fed. R. Civ. P. 17(b) and Louisiana law. However, in Louisiana, jail facilities are not juridical entities "legally empowered to do" anything

independently of either the respective parish officials or the parish sheriff. *See Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994). This Court also has held that "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp.2d at 892. In other words, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Par. Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *1 (E.D. La. Aug. 10, 2015).

For these reasons, the APDC is not a person or suable entity to be held liable under § 1983. The claims against it are frivolous and otherwise fail to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

### 3.    Nursing Staff at APDC

Sims has also named the "nursing staff" at APDC as a defendant claiming they are unprofessional, withdrew money from his account for his care, and gave his meals to other inmates.[7] A medical staff or department, however, is not a suable entity under § 1983. "[A] prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp. 2d at 892 (citations omitted); *see also*, *Smith v. Lafourche Par.*, No. 21-1714, 2021 WL 4975698, at *2 (E.D. La. Sep. 29, 2021) ("discrete departments of prison facilities are simply not considered to be 'persons' under § 1983."), *report and recommendation adopted*

---

[7] Sims's specific claim against Nurse Frannie is addresses later in this Report.

*by* 2021 WL 4972374, at *1 (E.D. La. Oct. 26, 2021); *Brewin v. St. Tammany Par. Corr. Ctr.*, No. 08-0639 2009 WL 1491179, at *2 (W.D. La. May 26, 2009) (§ 1983 action against the prison medical department dismissed because the department is not an independent entity capable of being a party to a lawsuit); *Jiles v. Orleans Par. Prison Med. Clinic*, No. 09-8426, 2010 WL 3584059, at *2 (E.D. La. 2010) ("[a] jail's medical department simply is not a juridical entity capable of being sued").

Instead, a § 1983 action must be filed against an *actual identified person*, not a department or general staff group at the jail. *See Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3 n.8 (E.D. La. Feb. 2, 2006) ("Medical Staff" is not a juridical entity capable of being sued; the specific medical personnel must be named); *see also*, *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); and *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007)).

Accordingly, Sims's broad claim against the nursing staff should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

### B.    **Claims Against Deputy Johnson**

#### 1.    **Unlawful Arrest**

Sims claims that he was stopped for an alleged traffic violation by Deputy Johnson on July 17, 2022. He further asserts that, although no traffic offense was ever documented, he was unlawfully arrested for a myriad of drug and weapons charges as a result of the stop without probable cause and allegedly based on false evidence.

Claims of false arrest, as well as false imprisonment or unlawful seizure, implicate guarantees of the Fourth and Fourteenth Amendments and, therefore, are actionable under § 1983. *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007); *accord Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015); *Martin v. City of Alexandria*, 198 F. App'x 344, 347 (5th Cir. 2006) ("The Fourth Amendment guarantees the right to be free from unlawful arrest."). "[I]t is beyond question that [a person] has a clearly established constitutional right to be free from arrest absent a warrant or probable cause." *Freeman*, 483 F.3d at 411. An arrest is lawful if a police officer has probable cause to believe the suspect has committed a crime or is committing a crime. *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (citing *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004)); *accord Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Consequently, there is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause. *Buehler v. Dear*, 27 F.4th 969, 991 n.85 (5th Cir. 2022); *Sorenson v. Ferrie*, 134 F.3d 325, 329 (5th Cir. 1998) (citing *Baker v. McCollan*, 443 U.S. 137, 144-45 (1979)); *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995); *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 651 (S.D. Tex. 2000).

Sims asserts in his supplemental pleadings that, after the filing of his suit, all of the drug and weapons charges were dismissed for lack of probable cause.[8] A false arrest cause of action requires a showing of no probable cause, which Sims has now alleged was the ruling of the state court. *See Hall v. Ramsey*, 470 F. App'x 297, 298 (5th Cir. 2012) (citing *Haggerty v. Tex. Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). For this reason, at this time, the Court must find that Sims has at least stated a non-frivolous claim for false arrest against Deputy Johnson. The claims should be allowed to proceed.

---

[8] ECF No. 13.

2.    <u>**Excessive Force**</u>

Broadly construing the complaint, Sims also claims that Deputy Johnson used excessive force during the arrest when he unnecessarily used a taser when Sims was not resisting and by causing Sims injury by removing the taser prongs before medical personnel arrived. In a separate incident, after being treated at the hospital following the arrest, Sims claims that Deputy Johnson intentionally drove erratically causing Sims to slam into the cage at least twice and fall to the floor of the patrol car before arriving at the jail.

Claims of excessive force "in the course of an arrest" are analyzed under the Fourth Amendment. *Tyson v. Sabine*, 42 F.4th 508, 515 (5th Cir. 2022). The substantive due process component of the Fourteenth Amendment applies to excessive force alleged to have occurred after all incidents of arrest are complete. *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397-398 (2015) (Due Process clause protects pretrial detainees from use of excessive force that amounts to punishment). When alleged incidents of excessive force are based on events prior to booking the arrestee into a jail, they are covered by the Fourth, rather than Fourteenth Amendment. *See McFarland v. Lee Co. Adult Detention Ctr.*, No. 20CV64, 2023 WL 2576398, at *3 (N.D. Miss. Mar. 20, 2023) (excessive force claim based on events occurring before plaintiff was booked into jail not cognizable under the Fourteenth Amendment, "as the plaintiff was not a pretrial detainee.") (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 457 (5th Cir. 1994); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)).

To state a Fourth Amendment excessive force claim, a plaintiff must allege that he suffered "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 312 (5th Cir. 2013) (quoting *Ikerd v. Blair*, 101 F.3d

430, 433-34 (5th Cir. 1996)). The test for reasonableness for the use of force is "not capable of precise definition or mechanical application." *Poole v. City of Shreveport*, 691 F.3d 624, 627-28 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In the context of excessive force in effecting an arrest, the Supreme Court has identified the following considerations to take into account: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Graham*, 490 U.S. at 396).

Furthermore, a claim for excessive force is actionable only if the plaintiff demonstrates an injury resulting directly and only from the application of force. Although the plaintiff is not required to show a "significant injury," he is required to show that he has suffered "'at least some form of injury.' The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Lincoln v. Turner*, 874 F.3d 833, 846 (5th Cir. 2017) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). However, while "a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Thus, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id*. (citation and quotation marks omitted). "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id*. (quoting *Ikerd*, 101 F.3d at 434-35).

Sims alleges here that Deputy Johnson unreasonably used force by tasering him when he was complying with his instructions to turnaround and place his hands on the trunk.[9] The taser he claims caused him to shake uncontrollably. In addition, the removal of the taser caused him pain and non-specific injury. More importantly, Sims alleges that he was taken to the hospital for evaluation or treatment after the taser incident. Sims also claims that he was caused to slam face first into the cage and fall to the floor of the patrol car as a result of Deputy Johnsons' intentional driving style. While the extent of the injury from that incident is not clear, it at least invokes the question of the reasonableness of the deputies' actions in exposing him to possible injury or danger.

Broadly construing the complaint, and based on the dismissal of the related charges of resisting arrest, the Court finds that Sims has at least alleged non-frivolous claims of excessive force against Deputy Johnson. These claims should be allowed to proceed.

### 3.    Theft of Money

Sims claims that Deputy Johnson took $600 out of his car and apparently kept it for himself although other money was seized from his car as evidence. Assuming Sims's allegation is true, he is not entitled to relief under § 1983 because there are available state-law remedies.

The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." However, neither negligent nor intentional deprivations of property by state actors rise to the level of due process violations if state law provides adequate post-deprivation. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Louisiana law provides an adequate post-deprivation remedy for both intentional and negligent deprivations or theft of property. *Hutchinson v. Prudhomme*, 79 F. App'x 54, 55 (5th Cir. 2003); *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994). "[T]he Fifth Circuit has ruled that

---

[9] ECF No. 11.

plaintiffs seeking to redress intentional deprivations of property by state actors must assert such claims as state law tort claims." *Robertson v. Town of Farmerville*, 830 F. Supp. 2d 183, 192 (W.D. La. 2011) (citing *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984)). Thus, when a state-law post-deprivation remedy exists, a plaintiff may bring suit in federal court for the theft only *after* he first pursues available state-law remedies and only if relief is denied on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983).

Sims, therefore, has failed to state a non-frivolous claim for which relief can be granted arising from the alleged taking of money from his car by Deputy Johnson. This claim should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A.

**C.    Claims Against Falcon and Prejean**

Sims claims that his family's complaints to internal affairs about Deputy Johnson were "overlooked" by defendants Falcon and Prejean, and family members were harassed when they tried to file complaints. As an initial matter, Sims may only pursue claims under § 1983 that involve violations of *his* constitutional rights, not the rights or concerns of other people. To the extent he attempted to file complaints that were overlooked, he has no constitutional right to have his grievances addressed or resolved to his satisfaction. The failure of officers to respond to an internal affairs complaint simply does not rise to the level of a constitutional violation under federal law. *See Salazar v. Flavin*, No. 14-0515, 2015 WL 13662588, at *6 (D.N.M. Jun. 4, 2015) (citing *Davis v. Scherer*, 468 U.S. 183, 194 & n.12 (1984); *Stewart v. Springfield Pol. Dep't*, No. 15-3057, 2015 WL 3419545, at * 1 (C.D. Ill. May 28, 2015) (assertion that defendant did not favorably resolve internal affairs charge against two officers does not allege the violation of a constitutional right); *Hason v. Beck*, No 13-3274, 2013 WL 6732672, at *3 (C.D. Cal. Dec. 19, 2013) (gathering cases to find plaintiff has no constitutional right to have internal affairs complaints against officers

investigated or heard in a particular manner). Sims's claims against Deputies Falcon and Prejean should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A.

  D.  **Claim Against Nurse Frannie**

  Sims asserts in his complaint that a defendant identified only as Nurse Frannie on one occasion broke a 20 mg pill in half to give Sims the 10mg of that medication that he was prescribed. His allegations falls far short of stating a non-frivolous claim for denial of medical care against this defendant.

  Inadequate medical for purposes of a § 1983 claim occurs only when the conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs" that "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). As applied to pretrial detainees, like plaintiff, "[t]he Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011). Under this deliberate indifference standard, a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Deliberate indifference is manifested in the providers intentional denial of medical care or intentionally interfering with the treatment once prescribed. *Farmer*, 511 U.S. at 847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency." *Id*. Thus, mere disagreement with medical treatment is insufficient to state a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to

meet. *Domino v. Tex. Dep't. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, Sims does not allege that he was denied medical treatment by Nurse Frannie. He does not allege that he was entitled to more of the medication than she gave him or that he had any adverse effects from the halved pill she administered. Sims simply has not alleged that there was a deliberate indifference to his care or any interference with the care he was prescribed.

Sims, therefore, has failed to state a non-frivolous claim against this defendant. His claim against Nurse Frannie should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1915e as applicable.

### E.    General Conditions of Confinement at APDC

The Eighth Amendment's prohibition on "cruel and unusual punishments" applies to both convicted inmates and pretrial detainees through the Fourteenth Amendment's Due Process Clause. *Estelle*, 429 U.S. at 102-103 (citations omitted); *Farmer*, 511 U.S. at 832, 837.  Pretrial detainees, like the plaintiff in this case, may bring these constitutional challenges as an attack on a "condition of confinement" or as an "episodic act or omission."  *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009); *see also Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456, 464 (5th Cir. 2015) ("[T]here is no rule barring a plaintiff from pleading both alternative theories[.]"). An inmate's "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Reed*, 795 F.3d at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).

Courts deciding the constitutionality of conditions of confinement of pretrial detainees must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Courts may find a punitive purpose upon direct proof

of an expressed intent by detention facility officers to punish the pretrial detainee for a crime with which the detainee has been charged but not yet convicted. *Id*. at 538. In addition, courts may infer a punitive purpose if the challenged condition or restriction is not reasonably related to a legitimate governmental objective. *Id*. at 539; *Hamilton v. Lyons*, 74 F.3d 99, 104 (5th Cir. 1996).

In this case, Sims makes broad, general complaints that APDC is outdated and a health risk, perhaps in part because he also claims the medical staff is not at the jail 24 hours per day. He calls it a fire hazard, claiming that there are no sprinklers, alarms, or fire extinguishers in the jail or dormitories. He also claims there are no call buttons or intercoms for the inmates to use in the disciplinary lockdown cells. And, in that area, the guards do not conduct enough security checks.

Sims has not alleged that the conditions of APDC were imposed upon him as punishment or punishment for crimes he did not commit. To the extent Sims was discontent with the jail facility and perhaps believed it to be outdated, or without modern amenities, he has not state a claim under § 1983. The Constitution does not require a comfortable prison; instead, prison officials must provide humane conditions, including adequate and necessary medical care and safety for both pretrial and convicted inmates. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer*, 511 U.S. at 832). The Constitution does not "require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, No. 09-2923, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009) (citations omitted).

Sims claims that the jail had inadequate safety protocols in place, although he does not claim that this caused him any problems or injury. To the extent he contends that jail officials were negligent for failing to provide better security, such a claim is not cognizable in this federal proceeding. *See Eason v. Thaler*, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed under section 1983."); s*ee also Baker*, 443 U.S. at 146

("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). Under constitutional standards, a failure to protect claim would require more than his mere discontent with the safety and fire protocols in place. To establish such a claim, Sims would have to show that he faced a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Sims does not allege that the purportedly inadequate security ever placed him in harm's way, that he personally was particularly susceptible to being attacked, or that prison officials were made aware of but deliberately indifferent to a specific need for protection. Sims offers nothing more than his vague and conclusory allegation that security efforts were generally inadequate, and it is clear that such allegations do not alone suffice to state a federal claim. *See, e.g.*, *Morrison v. Gusman*, No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); *Sweat v. Corr'ns Corp. of America*, No. 08-0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

Sims also complains that the jail lacks certain fire safety equipment which he deems should be in the prison. However, a mere failure to comply with local fire codes is not determinative of a constitutional violation. *Johnson v. Tex. Bd. of Crim. Justice*, 281 F. App'x 319, 322 (5th Cir. 2008). Moreover, where, as here, an inmate does not "allege that anyone had been injured by any type of fire or that [the jail] was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim." *Id.*; *accord Hunnewell v. Warden, Maine State Prison*, No. 93-1917, 1994 WL 52643, at *4 (1st Cir. Feb. 23, 1994) ("[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution. Moreover, even liberally construed, plaintiff's complaint that his cell is unsafe due to fire hazards is conclusory and fails to state a claim under § 1983." (citation omitted)); *Sampson v. King*, 693 F.2d 566, 569 (5th Cir.

1982) ("In operating a prison, ... the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure." (citations omitted)); *Patin v. LeBlanc*, No. 11-3071, 2012 WL 3109402, at *17 (E.D. La. May 18, 2012), *Report and Recommendation adopted*, 2012 WL 3109398 (E.D. La. July 31, 2012); *Davis v. St. Charles Parish Corr. Center*, No. 10-98, 2010 WL 890980, at *7 (E.D. La. Mar. 8, 2010); *Jernigan v. Dretke*, No. 04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005) ("At the most, [plaintiff] has alleged a condition that may violate local fire codes. The prison does not violate the Constitution if it fails to comply with all health and safety standards. Although the situation [plaintiff] describes is far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue.  No actual harm has been alleged, and [plaintiff's] speculative worries do not establish a claim." (citations omitted)).

Sims also claims that the broken air condition resulted in his accidental slip and fall as a moisture accumulated in the cells and on the floors, wetness he was already aware of before he fell. While this claim is addressed here, it fits squarely into the episodic event analysis rather than the general conditions addressed above. Under an episodic act or omission case, "a prison official may be held liable . . . for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *See Pomier v. Leonard*, 532 F. App'x 553, 554 (2013) (quoting *Farmer*, 511 U.S. at 847).

19

Sims does not allege that the prison officials ignored the accumulated water or purposefully created or ignored the condition of the dormitory when the air condition failed. In fact, Sims acknowledges that the prison officials locked the inmates in their cells to avoid incidents like the one with the inmate who fell before Sims's fell in his cell. To the extent Sims claims that the prison officials were negligent in allowing the situation to happen, negligence claims are not cognizable under § 1983. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (stating "acts of negligence . . . do not constitute deliberate indifference"); *Coleman v. Sweetin*, 745 F.3d 756, 764-65 (5th Cir. 2014) (ordinary negligence does not implicate constitutional standards).

Sims also claims that, after receiving medical treatment for the fall, he was temporarily returned to a holding cell that unsanitary and made to sleep in a boat bed on the still-wet floor rather than a bunk. Again, he does not allege that he was placed there as punishment for it to have violated the Fourteenth Amendment. Although such conditions are not commodious or pleasant, he has not alleged any physical injury resulting from his temporary stay in these conditions. Physical injury, even for a pretrial detainee, is a requirement for recovery under the Prison Litigation Reform Act of 1996. 42 U.S.C. § 1997e; *see Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630-31 (5th Cir. 2003) (inmates could not recover damages from their temporary exposure to "deplorable conditions" where the only injury alleged was nausea from the smell of raw sewage); *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) (pretrial detainee's episodic act or omission claim for confinement in an unsanitary cell for a period of 10 days failed because "a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation") (citation omitted); *Letizia v. Gonzalez*, No. 18-4814, 2019 WL 2185518 at *2 (S.D. Tex. May 21, 2019) (dismissing inmate's conditions of confinement

claims due to a lack of sufficient physical injury even though inmates alleged they were forced to defecate in plastic bags and urinate in the shower for a period of 5 days due to "no water service").

Furthermore, although he also allegedly missed two days of medication, Sims does not indicate that the missed medication caused him any physical harm or amounted to deliberate indifference to a serious medical need as required to state a claim under the Constitution. *See Williams v. Cearlock*, 993 F. Supp. 1192, 1196 (C.D. Ill.1998); *see also West v. Millen*, No. 02-4055, 2003 WL 22435692, at *3 (7th Cir. Oct. 9, 2003), *cert. denied*, 541 U.S. 944 (2004); *Oden v. Conklin*, No. 94-2504, 1995 WL 632467, at *1 (7th Cir. Oct. 25, 1995); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Boutte v. Bowers*, No. 01-1084, 2001 WL 1041761, at *3 (N.D. Tex. Aug. 30, 2001). Similarly, Sims also failed to state the need for a medical staff on duty 24-hours a day or that he was ever denied care for a serious medical need because the medical staff was not present.

For all of these reasons, Sims has failed to establish that the conditions of his confinement, or any episodic event arising from those conditions, resulted in the violation of his constitutional rights. His claims must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1915e as applicable.

## IV.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that Sims's § 1983 claims against defendants the Assumption Parish Sheriff's Office, the Assumption Parish Detention Center, the nursing staff, Deputy Falcon, Deputy Prejean, and Nurse Frannie, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915, § 1915A and as applicable, 42 U.S.C. § 1997e, as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Sims's § 1983 claim against Deputy Johnson for the alleged taking of $600 be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915, § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Sims's remaining § 1983 claims against Deputy Johnson for false arrest and use of excessive force on July 17, 2022, be allowed to proceed forward and remain referred to the undersigned for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this _14th_ day of June, 2023.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.